WILLIAM M. TOOMER, *Appellant,* v. C. L. CHANCEY, ET. AL., *Appellees.*

Division B.

Opinion Filed August 3, 1926.

Petition for rehearing denied September 28, 1926.

1. Contract construed and held to require the delivery of abstracts showing good and sufficient title in the owners before the purchaser could be required to make the cash payment named in the contract.

2. A general demurrer for want of equity will be overruled if there is any ground for equitable relief stated in the bill.

3. The rule that the discretion of the Chancellor in refusing the specific performance of a contract for the sale of real estate

will not be disturbed on appeal, unless clearly erroneous, Murphy v. Horne, 73 Fla. 803, 74 South. Rep. 973; Dixie Naval Stores Co. v. Germ. Am. Lumb. Co., 76 Fla. 339, 79 South Rep. 836, applies to decrees on the merits. The Chancellor does not exercise discretion in sustaining or overruling demurrers; but there he applies rules and settled principles of law and equity and renders his orders in accordance therewith.

An Appeal from the Circuit Court for Brevard County; J. J. Dickinson, Judge.

Reversed.

*G. P. Garrett,* for Appellant;

*George M. Powell* and *V. C. Giblin,* for Appellees.

BUFORD, J.—A bill of complaint was filed by Toomer against C. L. Chancey and Bland & Driggers, a co-partnership composed of W. A. Bland and J. H. Driggers. Demurrers were filed and sustained to the bill of complaint whereupon Toomer filed an amended bill of complaint, in which he eliminated Bland & Driggers as defendants and complained against C. L. Chancey, Gus C. Edwards and his wife, C. M. Edwards, and The Florida Beaches, a Florida corporation.

The Miami Real Estate and Building Company, a corporation under the laws of Florida, and J. H. McCarthy, Jr., filed a petition praying to be allowed to intervene as complainants. The record shows that without notice and without the consent of the complainant the petition was granted. The petition alleges such facts as to show that the interest of the petitioners is adverse to that of the complainant and that they seek in this cause to procure affirmative relief against the complainant upon an alleged contract which constitute no part of Toomer's cause of action

against the defendants named in his amended bill of complaint. The petition to intervene should have been denied. 21 Corpus Juris, 343; Doke v. Williams, 45 Fla. 248, 34 South. Rep. 569; Carter v. Smith, 35 Fla. 169, 17 South. Rep. 411.

Separate demurrers were filed by C. L. Chancey and Bland & Driggers to the amended bill of complaint; each of such demurrers was a general demurrer. The demurrer of Bland & Driggers was without standing because Bland & Driggers are not named in the amended bill of complaint and no relief is sought therein against them or either of them.

Each of the demurrers was sustained by the Court and the amended bill of complaint was dismissed. From this order appeal was taken. A general demurrer for want of equity will not be overruled if there is any ground for equitable relief stated in the bill. This rule is so well fixed that it is not needful to cite the decisions of this Court in which it has been specifically held. Made a part of the bill of complaint are several documents which are relied upon by the complainant as the foundation for his suit. The contract is set forth as follows:

"J. T. Walker            ·                J. H. McClelland

WALKER & McCLELLAND
REALTORS
P. O. Box 1025
Cocoa, Florida.

Cocoa, Fla., April 30th, 1925.
Received of W. M. Toomer of Jacksonville, Fla., ONE THOUSAND and no/100 Dollars as part purchase money on the following described property to-wit:

—All that tract or parcel of land lying and being in the County of Brevard, State of Florida to-wit:

—Government Lots 1 and 2, 3 and 4 Section 35 TWP 25 South Range 37 East.

Which on and for account of the owner, C. L. CHAN-CEY, we have this day sold to the purchaser above named for the sum of $210,000.00 to be paid as follows: $1000.00 this day received as above, $77,750.00 cash when abstracts showing good and sufficient title in owner is furnished.

Owner agrees to furnish abstracts showing good and sufficient title free from all incumbrances except:—

'Purchaser agrees to asume contracts between C. L. Chancey and Gus C. Edwards and The Florida Beaches, a Florida Corporation, described in ''Exclusive Listing'' given Walker and McCelland, a copy of which is attached hereto and made a part of this sales contract.

Purchaser also agrees to pay to C. L. Chancey $26,250.00 on April 1929 also mentioned in ''Exclusive Listing'' given Walker and McClelland herein referred to.'

Signed in triplicate.

WALKER and McCLELLAND, REALTORS
Agent.

By J. T. Walker (Signed)

I hereby agree to purchase the above described property on the terms and conditions named above. Dated April 30th, 1925.

W .M. Toomer        (Seal)
Purchaser

Signed, Sealed and delivered in the presence of:

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

(Said listing above referred to is in the words and figures following)

J. T. Walker                      J. H. McClelland
WALKER & McCLELLAND
Realtors

P. O. Box 1025
Cocoa, Florida.

(COPY)

April 8th, 1925.''

This agreement made this 8th day of April 1925 between Walker and McClelland Realtors of Cocoa Fla. and C. L. Chancey of Ft. Lauderdale Fla., whereas the said C. L. Chancey agrees to give to Walker and McClelland the exclusive listing until May 1st, 1925, on the following property:

Govt. Lots 1 and 2, 3 and 4 Section 35 Twp 25 South Range 27 East, Brevard County, Florida. At the following price and terms:

Total purchase price $210,000.00.

$78,750.00 cash and assume contract between C. L. Chancey and Gus C. Edwards and the Florida Beaches, a Florida Corporation.

Payments on contract as follows:

$26,250.00 on or before October 1926 (Dates given are $26,250.00 on or before October 1927 (approximate dates $26,250.00 on or before October 1928 (or payments on contracts or deed.

Above payment to be paid to Gus C. Edwards and the Florida Beaches, a Florida Corporation.

Which they now hold notes for same signed by C. L. Chancey. Balance of $26,250.00 April 1929 to C. L. Chancey. All payments bearing interest 6% interest annually payable semi-annually. I agree to pay you 10% commission on sale price above stated payable out of the first cash payment.

Any other terms submitted contrary to the above and accepted by us carries the same commission and form of settlement out of first cash payment.

(Signed)

(C. L. CHANCEY")

After this contract was entered into between the Brokers and Toomer, the bill alleges that a letter in the following language was received by Toomer from Chancey:

## C. L. CHANCEY, LAWYER

Sunset Building.

R. R. Sanders                    Ft. Lauderdale, Fla.

May 8th, 1925.

Col. W. M. Toomer,
Graham Building,
Jacksonville, Fla.

Dear Sir:

On the 5th instant I delivered to Walker & McClelland an abstract brought down to date of your purchase from me through them of Government Lots One (1) Two (2), Three (3) and four (4), Section 35, Township 25 South, Range 37 East, situate in Brevard County, Florida. I also delivered to them on that day a receipt for the 1924 State and County taxes assessed against this property which the abstract shows to remain unpaid, together with a receipt from Gus C. Edwards, the owner, for the interest due under the contracts which I hold for the purchase of this property, one-half (½) of which matured on the 23rd day of April and the other one-half (½) on the 6th day of this month.

                              C. L. Chancey, Lawyer
                              Sunset Building
                              Ft. Lauderdale, Fla.

Col. W. M. Toomer,—No. 2.

The abstract shows the institution and pendency of a suit instituted by L. D. Allen and L. P. Allen against myself, W. A. Bland and H. J. Driggers. The Court files in this suit were not in the Clerk's office in Titusville when the abstract was certified to and none of the papers are recited in the abstract. The abstract shows no lis pendens of record in this suit.

In order to save any question arising in your mind as to whether or not this suit in any way affects the property above described, I am enclosing herewith a copy of the Bill of Complaint which was furnished by the Clerk to me when this suit was filed. Since the answers of the defendants were filed in this suit no further prosecution of the same has been made and it is my belief that the Complainants, in view of the facts stated in the defendants' answers which were sworn to, have abandoned any further prosecution of the suit. The Court papers in this case were before the Judge at Sanford when the Decree Pro Confesso was set aside and I have today written a letter requesting these papers to be returned to me or to the Clerk at Titusville. You will notice from the Bill of Complaint, copy of which is enclosed herewith that no relief is prayed by the Complainant which is to be enforced in anyway out of the land involved, the object of the suit being merely to bring about an accounting of commission between the Complainants and myself in a sale which the complainants alleged to have made through me with some other person.

I am writing you this letter and enclosing the Bill of Complaint in order that you may become satisfied that the

title to the property above described is not affected by this suit.

You will also note that the abstract shows a mortgage or trust deed on Lots one (1) and Two (2) given by Mr. Edwards; the contract on lots one (1) and two (2) which I hold and will assign to you provides that any payments which become due under the contract may be paid to the trustee in satisfaction of this mortgage for the payment of which Mr. Edwards agrees to accept credit on the contract, and you will notice that sufficient payments mature under the contract to pay off the mortgage before the mortgage itself matures.

It has occurred to me that you or your attorney could probably draw the assignment of these contracts from me to you in such way as to be more acceptable to you than if the same are prepared by me. I will execute any assignment which secures the payment of $26,250.00 which you are to pay in April 1929 plus six per cent (6%) interest, payable semi-annually, and would be pleased if you would have prepared and submit to me the form of assignment you would have me execute in the event this sale is consummated.

Under the terms of the sale you have Fifteen (15) days from the delivery of the abstract within which to pay the balance of the cash payment. The abstract having been delivered on the 5th inst, the time within which the sale must be consummated will expire on the 20th day of this month.

Yours very truly,

CLC:LB                    (Sgd)      C. L. Chancey.''

The bill alleges that the contract was made in triplicate; one copy being retained by Toomer, one copy being retained by the Brokers and the other copy with the initial

payment of One Thousand Dollars ($1,000.00) being delivered to Chancey and that he retained the same. The letter from Chancey to Toomer together with the alleged act of Chancey in retaining the signed contract and the initial payment of $1,000.00 without objection to the terms of the contract fully ratifies the terms of the sale as negotiated and contracted for between Toomer and the Brokers for Chancey. The letter assumes that Chancey complied with one of the terms of that contract by delivering to the Brokers an abstract which he, Chancey, assumes to be "abstracts" "showing good and sufficient title in owners." Whether or not this assumption is justified depends on whether or not as a matter of fact such abstracts as were required to be furnished under the terms of the contract were actually furnished. Under the terms of the contract the sum mentioned, $77,750.00, was not required to be paid until abstracts showing good and sufficient title in owner were furnished. The contract provides as follows: "Owner agrees to furnish abstracts showing good and sufficient title free from all incumbrances except: purchaser agrees to assume contract between C. L. Chancey and Gus C. Edwards and The Florida Beaches, a Florida Corporation, described in exclusive listing given Walker and McClelland."

The Bill alleges that such abstract was not furnished and alleges that Toomer gave Chancey notice of the failure of abstracts to comply with the requirements in a letter and memorandum thereto attached as follows:

"May 16, 1925.

Mr. C. L. Chancey,
Ft. Lauderdale, Florida.
Dear Sir:

Your wire of the 15th received but no letter has reached me up to this hour. Since I am leaving the city at three

o'clock, I will write you in regard to Government lots 1, 2, 3, and 4, Section 35, Township 25 South, Range 37 East. Before undertaking to ascertain from the abstracts submitted the state of the title to these lots, the abstracts in my view, should be completed in the respects shown on a memorandum for your use which I have prepared and attached hereto and enclose herewith. The abstracts are not complete in other respects but I think the last mentioned omissions are unimportant.

In view of the fact that apparently the title to all of this property, except six acres, rests upon a quit claim deed from the residuary legatee of Hazard Brown, I feel convinced that the course and disposition of the administration in Rhode Island on the estate of Brown should be exhibited.

Yours very truly,

Memo for Mr. C. L. Chancey, Ft. Lauderdale, Florida, on abstracts 7750, 8632 and 10509, prepared by Indian River Abstract Company covering Governments lots 1, 2, 3 and 4, Section 35, Township 25 South, Range 37 East.

ON ABSTRACT NO. 7750—

Item No. 2. No statement shown as to how or whether deed signed, sealed and delivered or how or if witnessed and before whom acknowledged.

Item No. 5. Absence of notarial seal not accounted for by certificate or Clerk in jurisdiction of notaries appointment as to officer's official character.

Item No. 6. No statement of whether or how deed witnessed or whether acknowledged by Maude E. Brown on separate and private examination, etc.

Item No. 7 to No. 12 inclusive. No records whatever shown from the probate Court of Hopkinton, Rhode Island,

showing the conduct and disposition of the administration on Brown estate.

Item No. 13.   No records shown with respect to state and county taxes prior to year 1923.

ON ABSTRACT NO. 8632—

Item No. 4.   No statement whether or how deed witnessed or acknowledged.

Item No. 5.   No statement of how or whether deed witnessed or how separately acknowledged by Susan R. Cottrell.

Item No. 7.   No statement of how or whether deed witnessed nor as to separate acknowledgments as to grantor wives.

Item No. 8.   Same omissions as to item No. 7.

ON ABSTRACTS NO. 10509—

Item No. 1.   This item should be amplified so as to indicate what interest, if any, H. C. Lane ever had in lots 3 and 4, Section 35, Township 25 South, Range 37 East.

Item No. 2.   No statement of how agreement for deed executed, witnessed or acknowledged.''

This contract made between the Brokers and Toomer and ratified by Chancey was not merely that Chancey should furnish abstracts of title; but it was *stipulated* that the abstracts *should show* good and sufficient title in the owner.   In the light of the whole transaction it must be construed that this contract meant that the abstract should show good title in Chancey's vendors who were under a bin show good title in Chancey's vendors who were under a binding contract to convey such title to Chancey. If the abstracts submitted failed to *contain* the necessary data to *show* good and sufficient title in such owners, then Chancey had not complied with his part of the contract and the payment of $77,750.00 was not due from Toomer to him until he had complied with that provision of the contract.   If the

abstracts were imperfect in the respect pointed out in the memorandum submitted by Toomer to Chancey, then the abstracts did not meet the requirements of the contract.

The rule is that the discretion of the Chancellor in refusing the specific performance of a contract for the sale of real estate will not be disturbed on appeal, unless clearly erroneous. Murphy v. Horne, 73 Fla. 803, 74 South. Rep. 973; Dixie Naval Stores Co. v. Germ. Am. Lum. Co., 76 Fla. 339, 79 South. Rep. 836, applies to decrees on the merits. The Chancellor does not exercise discretion in sustaining or overruling demurrers; but there he applies rules and settled principles of law and equity and renders his orders in accordance therewith. The bill of complaint presents equitable ground for relief and the demurrers should have been overruled.

A motion to dismiss the appeal in this case was prepared and served on the appellant more than ten days after the return day of the appeal and does not bring to the attention of the Court such matters as cause the Court to feel that it should make an order of dismissal sua sponte. The motion to dimsiss will therefore be denied. Supreme Court Rule No. 4.

The order of the Chancellor is reversed and the cause remanded for further proceedings.

Reversed.

WHITFIELD, P. J., AND TERRELL, J., concur.

BROWN, C. J., AND ELLIS AND STRUM, J. J., concur in the opinion.

PER CURIAM.—The contract required the owner *"to furnish abstracts showing good and sufficient title."* The

abstracts furnished may not show defects in the title, but they do not affirmatively show that several instruments in the chain of title are in fact and in law so executed as to make them effective in showing good and sufficient title as required by the contract. The stipulations of the contract are not controlled by a course of practice that may be sometimes or even generally observed in making abstracts of title. If the stipulated abstracts are duly furnished and the required payment is not duly made, the seller has his remedy. It is not essential in stating an equity in the complaint to allege that complainant is ready, able and willing to comply with the contract, the defendant and not the complainant being in default.

Rehearing denied.

WHITFIELD, ELLIS, TERRELL, STRUM AND BUFORD, J. J., concur.

BROWN, C. J., not participating.