JESSIE MAE BROWNE *v.* ISIDORE FINE.

January Term, 1932.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed February 4, 1932.

222

*Chas. F. Black* and *Robert W. Ready* for the defendant.

*William H. Edmunds* for the plaintiff.

SLACK, J.   The plaintiff seeks to recover the balance due on four promissory notes signed by defendant November 25, 1925. These notes are for $5,750 each, and are payable to the order of the plaintiff, with interest annually at 8 per cent., one, two, three, and four years from date respectively.   They are secured by a mortgage of same date, which provides that if any note, interest, or taxes on the mortgaged premises are not paid when due the

entire indebtedness, at the option of the holder of such notes and mortgages, shall be due at once.

The defendant denies liability on these notes, and seeks to recover money which he has paid plaintiff, on the ground that she has failed to perform certain agreements and obligations which he claims it was essential for her to perform to enable her to recover on such notes or to retain what she has already received; and on the further ground that he was induced to give such notes and make such payments through the fraud and deceit of the plaintiff.

The plaintiff denies the charge of fraud, and claims that such obligations as she assumed have been fully performed, or were merged in subsequent negotiations between her and defendant, or were waived by him.

These questions are properly raised by the pleadings. Trial was by jury. At the close of all the evidence a verdict was directed for the plaintiff, and judgment entered thereon. The case is here on defendant's exceptions.

On September 28, 1925, the parties made and entered into an agreement in writing which is in the language following:

"STATE OF FLORIDA,
MANATEE COUNTY.

This agreement, made this day between Mrs. J. M. Browne, party of the first part, and I. Fine, party of the second part.

Witnesseth: In consideration of $30,000 the receipt whereof is hereby acknowledged, party of the first part hereby agrees to sell party of the second part, heirs or assigns the following described real estate in Manatee County, Florida, to wit:

Roesch's Cor. Lot. No. 4 Florida Avenue, shown in City Plat, I, Book p. 199, at and for the price of $30,000 to be paid as follows: $1,500.00 this day as above, $5,500 cash within 30 days from date or as soon thereafter as abstract showing good and sufficient title can be furnished, balance, 1, 2, 3 and 4 years.

Party of the first part agrees to furnish abstract showing good and sufficient title free from all encumbrances in— except—and to convey said property by warranty deed.

Party of the second part agrees to terms hereof and to perform his part of said agreement, and to secure balance

purchase money by first mortgage on premises above described and to execute his promissory notes for deferred payment as above stated with interest 8 %.

Signed in duplicate this 28th day of Sep., 1925.

Mrs. Jessie Mae Browne,<br>
I. Fine.

Witnesses:

    Chas Wetherwax,<br>
    Mrs. Mary C. Cook.''

Pursuant to this agreement the plaintiff on November 25, 1925, executed and delivered to defendant a warranty deed of the premises described in such agreement, and he paid her $7,000 and executed and delivered to her the notes in question and a mortgage on said premises to secure the payment of such notes. He took and remained in possession of the property until January 1, 1930 (perhaps longer), at least sixteen months after this suit was brought, and some months after he must have known the property had been sold for taxes as hereinafter stated. At the time the plaintiff deeded to defendant there were two mortgages on the property, and the State, county, and city taxes thereon for 1925 had not been paid. Gardenshire or Lea, or both, who were attorneys located at Bradenton and who defendant testified were then acting as his lawyers, had previously seen and examined the abstract, and they told him about these encumbrances, and advised him that otherwise the title was all right. They also told him that the abstract had got to be ''fixed,'' and that when that was done they would send it to him. Defendant had this information before the transactions last mentioned were consummated. Plaintiff then agreed to pay the outstanding mortgages and the taxes. Defendant told her, in substance, that he did not want to pay any money unless he could rely on the assurances respecting the satisfaction of the mortgages and taxes, and the furnishing of the abstract. Plaintiff paid the mortgages and the city taxes, so they are not involved in this controversy. She did not pay the State and county taxes, and the property was sold the following July to satisfy them. Neither party knew of this fact until sometime later, the defendant not until 1930. He did not receive the abstract from Gardenshire & Lea, although he testified that he wrote them about it several times during 1926, and in 1930 he procured it

himself. He testified that he did not consider Gardenshire & Lea his attorneys in 1926 "only in regard to the abstract." Plaintiff and defendant met again in November, 1926. Defendant then told plaintiff that he had not received the abstract, and that he would make a payment provided he got the abstract and a clear title. She replied that she thought Gardenshire & Lea had the abstract. By agreement they met at Gardenshire & Lea's office the next morning, November 23, 1926, and defendant accused Lea of not furnishing the abstract as he agreed. Trouble followed between defendant and Lea which resulted in one Rice being called in to reduce to writing an agreement which plaintiff and defendant had previously made. This agreement recited the fact that defendant had paid the interest then due on plaintiff's notes and $2,000 on the principal, and provided for an extension of time for the payment of the balance due plaintiff. In all other respects the original mortgage remained unchanged. In this instrument plaintiff again agreed to pay the 1925 taxes. Plaintiff testified that during the negotiation on November 25, 1925, she asked defendant to pay all outstanding taxes and deduct the same from the first payment, and that both he and Lea said, "that would be all right," and that she made a like request when the extension agreement was executed. Neither conversation was denied by defendant, but he did not deduct the taxes on either occasion, nor did he pay them.

When the property was sold for taxes, the title vested in the State of Florida, subject to the right of redemption by any one interested therein prior to an actual conveyance to some one else, which might be made after a certain time had elapsed and upon the compliance with certain requirements. Defendant could have redeemed this property, and have got a clean title to it, so far as the taxes were concerned, down to 1931, by paying the 1925 taxes, together with certain penalties, and the taxes for the subsequent years. It was his duty to pay the latter. That he did not pay or attempt to pay these may be assumed, or he would have learned of the sale in July, 1926.

It appeared that after plaintiff discharged the two outstanding mortgages the abstract was delivered to an abstractor who completed and recertified the same, and that it remained with him until taken away by defendant's attorney, Mr. Black, in

1930; that defendant or his attorneys, Gardenshire & Lea, could have had it at any time by asking for it and paying the abstractor's fees. As far as appears, defendant made no attempt to get it from anyone after 1926 until 1930. He did not pay anything on his indebtedness to plaintiff after 1926, but he remained in possession of the property, and made no attempt to terminate or rescind the transactions until long after this suit was brought. He then attempted to rescind, and seeks to recover in this suit, under a plea in set-off, what he has paid plaintiff.

The first question considered is whether defendant had the right, in the circumstances, to terminate the contract of sale and purchase because of plaintiff's failure to furnish the abstract and pay the 1925 taxes. This question must be determined by the law of Florida. The parties disagree as to the force and effect of the judicial decisions of that state, and each introduced expert testimony relating thereto. Numerous cases, all of which have been examined, were referred to by the witnesses, but with few exceptions, only those cited in the briefs will be noticed. The defendant relies upon *Musselwhite* v. *Oleson,* 60 Fla. 342, 53 So. 944; *Cox* v. *Grose,* 97 Fla. 848, 122 So. 513; *Reese* v. *Levin,* 98 Fla. 397, 123 So. 809, and *Hillard* v. *Fitch,* 99 Fla. 654, 127 So. 341, to support the proposition that where a vendor of property contracts to convey a good title and also to furnish an abstract showing a good title, etc., and fails after a reasonable time to furnish the abstract, the vendee may treat such failure as an offer to rescind and declare a rescission. It is clear from these cases, and none to the contrary have come to our attention, that if defendant had not taken a deed of the property and gone into and retained possession thereof, and plaintiff had failed to furnish such an abstract as the contract called for after a reasonable time defendant might have declared a rescission, if he had done so seasonably. But such is not the case before us. Here defendant took a deed of the property with full knowledge of the true situation respecting the title and the abstract, made the initial payment, took possession of the property and remained in possession for five years before he attempted to declare a rescission. While we have not found a Florida case in which the facts were the same as in the instant case, which was not to be expected, we regard *Leathers*

*Development Co.* v. *Orange Inv. Co.*, 97 Fla. 278, 120 So. 329; *Walker* v. *Close*, 98 Fla. 1103, 125 So. 521; *Cox* v. *Grose, supra;* *Mickler* v. *Reddick,* 38 Fla. 341, 21 So. 286; *Hunter, Admr.* v. *Bradford,* 3 Fla. 269, and *Latin-American Bank* v. *Rogers,* 87 Fla. 147, 99 So. 546, as authority for holding that the contract for sale and purchase in this case had been so far executed that defendant could not rescind it. He chose to accept the deed, with full knowledge of the true situation, and to go forward with the deal on the mere verbal assurance that the agreements of plaintiff embodied in the contract of sale would be performed. For a breach of the agreement she is undoubtedly liable in damages, but such breach as is shown did not, in the circumstances, entitle defendant to terminate the contract.

We are not unmindful of the importance of the abstract under the law of Florida. See *Barclay* v. *Bank of Osceola County,* 82 Fla. 72, 89 So. 357. There was a time, as has been said, when defendant could have taken the course he now seeks to follow, but, as we construe the decisions of the Florida court, that time has passed.

In *Wheeler* v. *Sullivan,* 90 Fla. 711, 106 So. 876, 878, the court in speaking of an *executory* contract said: ''It is well settled that, in the absence of a provision to the contrary in the contract of sale, a purchaser under an executory contract cannot be compelled to complete his purchase or accept the title, if there is an encumbrance on the property which the vendor cannot or will not remove, *and which the purchaser himself cannot remove by an application of the purchase price,''* citing cases. (The italics are ours.)

The defendant in the instant case could have removed all known encumbrances on the property by paying the 1925 taxes. This he was authorized by plaintiff to do, both in 1925 and 1926, and in the former year he in effect agreed to do it.

The only question raised respecting the abstract previous to the commencement of this suit was that it had not in fact been furnished defendant, not that it showed a defective title. His attorneys, Gardenshire & Lea, had seen and examined it and advised him that it was all right save in certain particulars, which were soon corrected, except the removal of the 1925 taxes. Although not delivered to him, he could have obtained it at any time after the middle of December, 1925.

It is claimed that there are defects in the title other than those thus far mentioned. If so, they are not of a nature that would, in the circumstances, entitle defendant, under the Florida law, to declare a rescission.

█ █ It does not follow that because defendant could not rescind the contract that he cannot recover such damages as he sustained by reason of plaintiff's failure to furnish such an abstract as the contract called for and pay the 1925 tax. These he is entitled to, unless they were waived by his conduct. This was a jury question, and on this issue the offered evidence of defendant respecting what plaintiff said about the abstract in November, 1926, was admissible, and its exclusion was reversible error.

█ Subject to objection, one Singletary was permitted to testify in effect, in answer to a hypothetical question, that one in the position indicated by the question could not claim a rescission of the contract under the Florida law, but must proceed on the warranties for damages. This was error, for the reason indicated in *Jenness* v. *Simpson*, 84 Vt. 127, 78 Atl. 886, and *Tarbell* v. *Grand Trunk Ry. Co.*, 96 Vt. 170, 118 Atl. 484, 34 A. L. R. 1444, but since the court was forced to the same conclusion from the cases in evidence, the error was harmless.

█ The record does not show actionable fraud. To be sure, it shows that defendant acted on the strength of promises made by plaintiff which she failed to perform, but that does not constitute actionable fraud. It is argued that when plaintiff promised in 1926 to pay the taxes, she knew, or was presumed to have known, that the property had then been sold for such taxes. Even so, she still could have paid them and thereby have cleared the title therefrom. There was no evidence that she had actual knowledge of such fact, and the presumption of knowledge applied equally to both parties.

█ Defendant contends that the action cannot be maintained because plaintiff did not allege and prove performance of the obligations that were to be performed by her. This claim is without merit. The action is on the notes which are *prima facie* evidence of defendant's liability. If their validity, in whole or in part, is assailable, the burden is with him to show wherein.

*Judgment reversed, and cause remanded for the sole purpose of having defendant's damages, if any, resulting from plaintiff's*

*failure to perform her part of the agreement dated September 28, 1925, ascertained and applied on the amount due on the notes in question. Plaintiff to have judgment for the balance.*